UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NORMAN N.,[1]

        Plaintiff,

  v.

COMMISSIONER SOCIAL SECURITY,

        Defendant.

Case No. 3:18-cv-00162-YY

OPINION AND ORDER

YOU, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Norman N., seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

accordance with FRCP 73 and 28 U.S.C. § 636(c) (ECF #10). For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## ADMINISTRATIVE HISTORY

On January 26, 2015, plaintiff protectively filed for DIB and SSI alleging a disability onset date of January 1, 2014. Tr. 18.[2] He requested a hearing after his application was denied initially and on reconsideration. Tr. 93, 99, 102, 105. On December 14, 2016, a hearing was held before Administrative Law Judge ("ALJ") S. Pines, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-55. ALJ Pines issued a decision on February 16, 2017, finding plaintiff not disabled within the meaning of the Act. Tr. 18-30. After the Appeals Council denied his request for review, plaintiff filed a complaint in this court. Tr. 1-5. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. §§ 404.981, 422.210.

## BACKGROUND

Born in 1966, plaintiff was 47 years old on the alleged disability onset date, and 50 years old at the time of his administrative hearing. Tr. 150. He obtained a general education diploma ("GED"). Tr. 43. He has past relevant work experience as an assistant manager in retail. Tr. 28. Plaintiff alleges disability due to neck surgeries, left-shoulder surgeries, back pain, anxiety, depression, high blood pressure, and constant severe pain. Tr. 189.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed on August 22, 2017 (ECF #12).

405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The reviewing court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citation omitted). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. This sequential analysis is set forth in Social Security Administration regulations, 20 C.F.R. §§ 404.1520, 416.920, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision, Tr. 18-20.

At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date of disability. Tr. 20.

At step two, the ALJ determined that plaintiff had the following severe impairments: status post left shoulder decompression and labral tear repair; chronic low back and neck pain, status post cervical fusion; hypertension; obesity; depression; and anxiety disorder. *Id.*

At step three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment. Tr. 21-23.

The ALJ then found plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following limitations:

> [He] can stand and walk for four hours, can sit for six hours; can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally reach overhead, and can frequently reach in other directions; can occasionally balance, stoop, kneel, crouch, and crawl; should not have concentrated exposure to hazards; can have occasional contact with the public; and limited to simple routine work at the unskilled level.

Tr. 23.

At step four, the ALJ determined that plaintiff was unable to perform his past relevant work. Tr. 28.

At step five, the ALJ determined that plaintiff could perform jobs that exist in significant numbers in the national economy, including storage facility rental clerk, price marker, and small products assembler. Tr. 29-30. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of her decision. Tr. 30.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to give clear and convincing reasons for discounting his symptom testimony, and (2) failing to give legally sufficient reasons for rejecting the opinions of Dominique Greco, MD, and nurse practitioner Robert Perry, PMHNP ("NP Sperry").

I.       Plaintiff's Symptom Testimony

   A.       Legal Standard

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

B. Analysis

In a February 2015 function report, plaintiff detailed that due to "constant severe pain from numerous injuries and operations," he was unable to walk, stand, or sit for long or short periods of time. Tr. 227. Plaintiff left his home only when necessary, such as attending doctors' appointments, because crowds caused him to have anxiety attacks. Tr. 230. He made quick trips to get groceries and personal care items on an infrequent basis. *Id.* Plaintiff occasionally read and checked his email but spent most of his time watching television to avoid moving around. Tr. 231. He reported his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, use his hands, and get along with others. Tr. 232. Plaintiff reported he could follow written and spoken instructions "fine," got along well with authority figures, was never fired from a job because of problems getting along with other people, and did not handle stress or changes in routine well. Tr. 232-33.

At his hearing, plaintiff testified that he stopped working as an assistant manager for a truck stop on December 31, 2014. Tr. 43. Towards the end of his twelve-year employment, the owner of the truck stop started assigning plaintiff less responsibilities and reduced him to part-time hours. Tr. 43-44. Although he worked for years after undergoing numerous surgeries to his neck and left shoulder, plaintiff testified that the "pain just got to the point that [he] really couldn't do anything" anymore. Tr. 44. Due to pain, anxiety, and depression, plaintiff started "taking a lot more breaks" to the point that his job "became almost one big break." Tr. 48. While at work, he would often just sit or go out to his car to recline in the seat in order to get his pain under control. Tr. 49. Plaintiff sought vocational rehabilitation after quitting his job. *Id.*

He alleged that his vocational counselor recommended he take bookkeeping classes, but plaintiff declined to do so because dealing with other people caused him "too much anxiety." Tr. 45. Plaintiff was, however, able to deal with other people while working at the truck stop because the interactions were brief. *Id.* He averred that he could work at a less physically and socially demanding job if he were permitted to lay down "three or four times a day." *Id.*

Plaintiff further testified that, unless he had an appointment to attend, he typically spent most of his day laying down while watching television or playing a game. Tr. 46. He did not help with cooking, cleaning, or chores at home. *Id.* Plaintiff explained that he broached the subject of retirement with his doctors because he was initially unwilling to accept that he had a disability. Tr. 47. He was, however, able to come to terms with his impairments after participating in mental health therapy. *Id.* Plaintiff detailed that the medications he took for depression and anxiety helped "a little bit," but due to pain, he was still unable to partake in the activities he used to enjoy, such as coaching football and baseball, camping, horseback riding, bicycling, and swimming. *Id.* He also reported that his pain medication helped but made him groggy, and his doctor informed him that nothing could be done to avoid the drowsiness caused by the medication. *Id.* at 47-48.

The ALJ gave clear and convincing reasons for discounting plaintiff's symptom testimony relating to his psychological impairments. The ALJ found that plaintiff's refusal to consider pharmacological options to treat his depression undermined his symptom allegations. Tr. 25. An ALJ may reject a claimant's testimony based on an "'unexplained, or inadequately explained, failure to seek treatment' . . . unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989)). One of those "good reasons" is a "claimant's failure to obtain treatment he cannot obtain for lack of funds." *Id.* (citation omitted).

Plaintiff argues the ALJ erred by failing to acknowledge that, in 2014, he declined to discuss depression treatment with Dr. Greco because he was losing his health insurance. Tr. 470-72. However, the record reflects that plaintiff was able to afford his medications during the relevant period. Moreover, in July 2014, plaintiff reported to Dr. Greco that he was willing to pursue mental health treatment because he had insurance coverage. Tr. 475. At his initial appointment with NP Sperry the following month, plaintiff was open to taking medication that would help him sleep, but he was not willing to pursue treatment options for depression. Tr. 483. He repeatedly declined to trial an antidepressant until March 2015. Tr. 487, 493, 605. Accordingly, plaintiff's contention that he did not pursue pharmacological treatment due to financial difficulty is unpersuasive.

The ALJ further observed that plaintiff's psychological symptoms responded well to treatment. Tr. 26. An ALJ may take into consideration the efficacy of a claimant's treatment in evaluating symptom testimony. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, in November 2015, plaintiff reported to NP Sperry that his situation had significantly improved with his participation in vocational rehabilitation and his medication was helping with his depression. Tr. 711. In January 2016, plaintiff reported that he stopped taking his anti-anxiety and anti-depressant medications and did not notice any worsening of his symptoms. Tr. 719; *see also* Tr. 737 (plaintiff reporting to NP Sperry in April 2016 that his anxiety had "decreased to [a] point where he can go out in public but still would prefer not to," and that he was not taking anti-depressants and wished "to continue on th[at] track."). The ALJ noted that in July 2016, plaintiff again reported to NP Sperry that he had not noticed any deterioration in his mood since

discontinuing his psychotropic medications. Tr. 26, 756. Accordingly, the ALJ's finding was supported by substantial evidence.

The ALJ also found that plaintiff's mental health allegations were inconsistent with his activities of daily living ("ADLs"). Tr. 26. An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's ADLs, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Contrary to plaintiff's assertion that being around other people caused him severe anxiety and panic attacks, the ALJ noted that plaintiff was able to attend doctor's appointments, go shopping in stores, visit with friends and family members, and get along with authority figures. Tr. 26, 230-38. The court further notes that despite alleging he was unable to take bookkeeping classes because being around other people caused him too much anxiety, in June 2016, plaintiff reported to his vocational rehabilitation caseworker that he had "been trying to pass the placement test at [the community college] but [wa]s having problems with doing fractions." Tr. 44-45, 934. Moreover, the ALJ adequately accounted for plaintiff's psychological limitations by restricting him to occasional social interaction and simple, routine tasks. Tr. 26. Accordingly, the ALJ did not err by discounting the full extent of plaintiff's mental health allegations.

The ALJ, however, failed to provide clear and convincing reasons for rejecting plaintiff's excess-pain testimony. The ALJ again cited plaintiff's ADLs as a basis for rejecting his physical symptom allegations. Specifically, the ALJ noted that plaintiff was able to "attend to his personal care needs, watch TV and movies, read books and magazines, listen to music, vacuum the floors, wash his laundry, prepare and cook simple meals, and drive a car." Tr. 26. The ALJ also noted that plaintiff was able to go shopping in stores and use a computer to send and receive

9 – OPINION AND ORDER

emails. *Id.* The ALJ, however, failed to establish how plaintiff's ADLs were inconsistent with his excess-pain testimony or indicated capacities transferrable to a work setting. *See Orn*, 495 F.3d at 639; *Molina*, 674 F.3d at 1112-13. Indeed, the limited manner in which plaintiff reportedly carried out his ADLs was entirely consistent with his testimony that, due to pain and drowsiness caused by his medications, he had to rest often and limit physical activity. For example, plaintiff reported that he rarely vacuumed, could only prepare microwave meals on the rare occasion that he cooked for himself, washed his laundry every three weeks, and shopped for essentials only when necessary and in short trips. Tr. 230-31. He reported that he primarily spent his day watching television because doing so required little physical movement. Tr. 231. Sporadic completion of minimal activities is an insufficient basis for rejecting a claimant's symptom testimony. *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (A claimant "need not vegetate in a dark room in order to be deemed eligible for benefits," and "should not be penalized for attempting to lead normal lives in the face of their limitations.") (citations and quotation marks omitted).

The Commissioner contends the ALJ's finding should be upheld because the ALJ noted that, with accommodations, plaintiff was able to work part-time as an attendant and cashier for a filling station. Tr. 26. The Commissioner relies on Ninth Circuit case law in which the court upheld an ALJ's rejection of symptom testimony when the ALJ relied on evidence that the claimant did "carpentry work under the table," and "was active with yard work, work around the house, and that he was able to continue his past work activities as a contractor." *Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006).

The Commissioner's reliance on *Greger* is misplaced. Plaintiff never worked under the table and was only able to work part-time because he was assigned fewer or easier duties, less

hours, more breaks, and lower productions standards. Tr. 209. Even with those accommodations, plaintiff's employer noted that he was only sixty-percent productive and his overall work was unsatisfactory when compared to other similar employees. Tr. 209-10, 212. Seemingly, the ALJ was of the mistaken impression that plaintiff was still working for the filling station at the time of the hearing. *See* Tr. 20 ("The claimant is currently working part-time"); Tr. 26 ("Moreover, with accommodations, the claimant is able to work part-time as an attendant and cahier [sic] for a filing [sic] station."). Although plaintiff worked at the filling station for one year after his alleged disability onset date, the record clearly indicates that plaintiff stopped working on December 31, 2014—approximately two years before his hearing. Tr. 208.[3] Thus, unlike *Greger*, plaintiff was unable to successfully continue his past work activities, there is no evidence that he was working under the table, and the house work he was able to complete was infrequent and insignificant.[4] Moreover, the court fails to see how plaintiff's inability to satisfactorily perform a highly-accommodating, part-time job indicates plaintiff could sustain full-time employment. *Cf.* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("[The RFC] is the most [a claimant] can still do despite [his] limitations."); SSR 96-8p, 1996 WL 374184, at *1 (in formulating the RFC, the ALJ must assess "an individual's ability to do sustained work-related physical and mental activities . . . . 8 hours a day, for 5 days a week."). Accordingly, the ALJ's reliance on plaintiff's past employment was erroneous.[5]

---

[3] The ALJ found at step one of the sequential analysis that plaintiff's work at the filling station after the alleged disability onset date did not rise to the level of substantial gainful activity because plaintiff only worked part-time and required accommodations and extra breaks. Tr. 20.

[4] Although plaintiff reported mowing the lawn once per week, he further detailed that he used a self-propelled lawnmower and was unable to "do anything [the next day] due to hurting in neck, both shoulders, [and] low back." Tr. 614. He also reported on another occasion that he "was unable to use [his] left arm to mow the lawn." Tr. 625.

[5] The court declines the Commissioner's invitation to uphold the ALJ's finding on the basis that plaintiff was able to work for years after his neck and shoulder surgeries. *See Osenbrock v.*

The Commissioner next argues the ALJ's rejection of plaintiff's excess-pain testimony should be upheld because, in July 2016, plaintiff "reported putting his vocational rehabilitation on hold to bolster his disability case." Tr. 26, 767.[6] In support, the Commissioner notes that in *Berry v. Astrue*, the Ninth Circuit found the ALJ properly rejected the claimant's symptom allegations due, in part, to the claimant's report "that he wanted to do volunteer work but refrained for fear of impacting his disability benefits, and claimed disability dating from his last day of employment even though he admitted at the hearing that he . . . would have worked longer had his employer continued to operate." 622 F.3d 1228, 1235 (9th Cir. 2010). The Commissioner's reliance on *Berry* is unavailing. To begin, plaintiff stopped working at the filling station because he could no longer perform the physical demands of the job, not because his employer went out of business. Tr. 44. Thus, *Berry* is factually distinguishable from the case at bar.

More importantly, vocational rehabilitation services assessed that plaintiff could perform only part-time work, with additional restrictions and accommodations. Tr. 937-41.[7] "Generally, in order to be eligible for disability benefits under the Social Security Act, the person must be

---

*Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Although the ALJ noted in her cursory summary of the medical evidence that plaintiff requested permission to return to work while still recovering from his second shoulder surgery in November 2010, the ALJ did not rely on plaintiff's post-surgery work activities as a basis for rejecting plaintiff's symptom testimony. Tr. 25. As such, the Commissioner's argument is a *post-hoc* justification that cannot serve as a basis for upholding the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

[6] Apparently, plaintiff's "lawyers told him that if he was in school or working at all he would jeopardize his [disability benefits] appeal." Tr. 754.

[7] The ALJ additionally erred by completely ignoring the physical and neuropsychological evaluations conducted by vocational rehabilitation services to assist plaintiff with vocational planning. Tr. 937-41, 945-58; *Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [s]he errs.").

unable to sustain full-time work eight hours per day, five days per week." *Mulanax v. Comm'r of Soc. Sec.*, 293 F.App'x. 522, 523 (9th Cir. 2008); *see also Willis v. Callahan*, 979 F. Supp. 1299, 1305 (D. Or. 1997) ("If the claimant has stopped working, [his RFC] is determined by asking whether the claimant can work an eight-hour day. Thus, once a claimant has stopped working, [he] is considered disabled if [he] is only able to perform part-time work.") (citing *Ratto v. Secretary, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1430-31 (D. Or. 1993)). By way of analogy, when a claimant certifies that he or she is capable of performing either full-time or part-time work for purposes of receiving unemployment benefits, "[o]nly the former is inconsistent with[] disability allegations." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Therefore, had plaintiff secured part-time work through vocational rehabilitation services, his ability to do so would not have been inconsistent with his claim of disability. Accordingly, plaintiff's decision to put vocational rehabilitation on hold was not a clear and convincing reason to reject his excess-pain testimony. *See Lingenfelter*, 504 F.3d at 1036 (holding a claimant's part-time work after the alleged onset date, "in and of itself, . . . [wa]s not a sufficient basis for the ALJ's adverse credibility finding.").

Finally, the Commissioner argues the ALJ's finding of effective treatment was a clear and convincing reason for rejecting plaintiff's symptom testimony. Evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ's finding of effective treatment concerning plaintiff's hypertension was supported by substantial evidence. *See*, *e.g.*, Tr. 741, 759, 773. Moreover, the ALJ noted that plaintiff admitted to not taking his hypertension medication at times, plaintiff's primary care

physician repeatedly characterized his hypertension as "benign," and plaintiff consistently denied symptoms associated with high blood pressure. *See*, *e.g.*, Tr. 25, 496, 625-26.

However, the ALJ's finding that plaintiff's chronic pain responded well to treatment was not clear and convincing. Although the ALJ noted that Dr. Greco detailed that plaintiff was "doing well on minimal narcotics" and was "overall stable," Tr. 25, 469, 472, reports of "improvement" must be "interpreted with an awareness that improved functioning . . . does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017 (citation omitted). Notably, when Dr. Greco described plaintiff as "doing well on minimal narcotics" in August 2013, plaintiff had already reduced his work to part-time hours by that time and was still calling off from shifts due to pain. Tr. 469. He reported that his oxycodone was not working as well as it had before, but "it still help[ed] more than any of the other med[ications] he had been on in the past." *Id.* The ALJ also neglected to discuss that in November 2014, plaintiff reported his general pain level was a seven on a ten-point scale even though he was taking six oxycodone tablets per day. Tr. 601. Moreover, the ALJ's characterization of plaintiff's pain as "overall stable" glosses over the fact that in March 2015, Dr. Greco increased plaintiff's oxycodone dose to eight tablets per day because plaintiff reported his current dosage was ineffective and the doctor had "no [other] interventions left to offer." Tr. 472, 606. The ALJ also erred by failing to address the side-effects of plaintiff's medication and his need to lie down for pain relief. *See* SSR 16-3p, at *8 (the ALJ will consider the "side effects of any medication an individual takes or has taken to alleviate pain or other symptoms . . . [and] any measures other than treatment an individual uses or has used to relieve pain). Therefore, the ALJ's finding of effective pain treatment was not supported by substantial evidence. *See*

*Garrison*, 759 F.3d at 1017 ("it is error for an ALJ to pick out a few isolated instances of improvement . . . [and] treat them as a basis for concluding a claimant is capable of working.").[8]

In sum, the ALJ gave clear and convincing reasons for discounting plaintiff's symptom allegations attributable to his psychological impairments and hypertension but failed to give clear and convincing reasons for rejecting plaintiff's excess-pain testimony.

## II.   Medical Opinion Evidence

Plaintiff argues the ALJ erred by giving "little weight" to the opinion of treating physician Dominique Greco, MD, and "moderate weight" to the opinion of treating nurse practitioner Robert Sperry, PMHNP. Tr. 26-27.

### A.   Dr. Greco's Opinion

Dr. Greco was plaintiff's primary care physician since at least January 2010. *See* Tr. 996. She mainly treated plaintiff's chronic pain and hypertension. *See*, *e.g.*, Tr. 964-1016. In May 2015, Dr. Greco opined that in order for plaintiff to work, "he would require retraining to a different position that would accommodate his needs for very frequent breaks and flexibility in his activities, [and] he may not be able to work a full day in any type of job." Tr. 614.

In giving little weight to Dr. Greco's opinion, the ALJ first noted that the opinion touched on the ultimate issue of disability. Tr. 26-27. "In disability benefits cases, physicians typically

---

[8] Because the ALJ failed to give reasons sufficient for rejecting plaintiff's pain testimony, the court declines to address the Commissioner's argument that plaintiff's pain allegations were unsupported by objective medical evidence. Even assuming the ALJ's finding was supported by the record, a "lack of medical evidence cannot form the *sole* basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (emphasis added); *see also Stewart v. Sullivan*, 881 F.2d 740, 744 (9th Cir. 1989) (observing that "excess pain, by definition, is pain that is not supported by objective medical findings. If the [Commissioner] were free to disbelieve excess-pain testimony solely on the grounds that it was not supported by objective medical findings, then the [Commissioner] would be free to reject all excess-pain testimony.") (citation omitted).

15 – OPINION AND ORDER

provide two types of opinions: medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, *i.e.*, opinions about whether a claimant is capable of any work, given her or his limitations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). A statement by a medical source that a claimant is "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner and is not given "any special significance." 20 C.F.R. §§ 404.1527(d), 416.927(d). Nonetheless, "an ALJ may reject a treating physician's uncontradicted opinion on the ultimate issue of disability only with 'clear and convincing' reasons supported by substantial evidence in the record." *Holohan*, 246 F.3d at 1202-03 (citation omitted).[9] Thus, here, the ALJ needed to provide an additional reason for rejecting Dr. Greco's opinion.

The ALJ's only other basis for rejecting Dr. Greco's opinion was that it was overly reliant on plaintiff's self-reporting. Tr. 27. The ALJ based this finding on Dr. Greco's notation that she reviewed a "[three] page disability form" with plaintiff and "filled [it] out based on his self[-]report of what he can and cant [sic] do." Tr. 614.[10] "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). However, Dr. Greco primarily treated plaintiff's physical impairments, and her opinion that plaintiff would require a job that permitted frequent

---

[9] The Commissioner asserts a more deferential standard applies because when a "treating physician's opinion on the issue of disability is controverted, the ALJ must . . . provide [only] specific and legitimate reasons in order to reject the . . . opinion." *Holohan*, 246 F.3d at 1203 (citation omitted). The ALJ, however, rejected all of the medical opinion evidence relating to plaintiff's physical limitations. Tr. 27-28. Because the ALJ failed to identify what credited evidence contradicted Dr. Greco's opinion, the clear and convincing standard applies. Nevertheless, the ALJ's rejection of Dr. Greco's opinion was erroneous regardless of what standard applies.

[10] The parties agree that the three-page report is not included in the record.

16 – OPINION AND ORDER

breaks and flexibility was based on plaintiff's chronic pain and the side-effects of his medication. Tr. 614. As discussed, *supra*, the ALJ's reasons for discounting plaintiff's excess-pain testimony were neither legally sufficient, nor based on substantial evidence. Thus, the ALJ's finding that Dr. Greco's opinion merited no weight because she relied on plaintiff's self-reporting also fails. Accordingly, the ALJ erred in rejecting Dr. Greco's opinion.

B.     NP Sperry's Opinion

NP Sperry began treating plaintiff for depression and anxiety in August 2014. Tr. 480. In December 2016, NP Sperry completed a mental impairment questionnaire furnished by plaintiff's attorney. Tr. 678-81. He noted plaintiff was diagnosed with "depression, major recurrent moderate." Tr. 678. He assessed that plaintiff was moderately[11] limited in several functional areas. Tr. 679-80.[12] He further opined that plaintiff was markedly limited in the ability to: work in coordination with or in proximity to others without being distracted by them; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. *Id.* NP Sperry indicated plaintiff's assessed limitations were based on his depression, social anxiety, and episodes of panic. *Id.* Finally, NP Sperry opined that plaintiff would miss two days of work in an average month. Tr. 679.

---

[11] The form used by NP Sperry defines "Moderate" as: "The individual will have intermittent difficulty performing in this area. The individual can generally perform satisfactorily in this area but not always," whereas "Marked" is defined as: "There is serious limitation in this area. The individual cannot generally perform satisfactorily in this area." Tr. 678.

[12] Specifically, NP Sperry assessed plaintiff as moderately limited in the abilities to: complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace with a standard number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Tr. 679-80.

As a preliminary matter, plaintiff asserts the ALJ could have consulted an independent medical expert to review NP Sperry's opinion. Plaintiff, however, cites no authority for the proposition that the ALJ had a duty to do so. Indeed, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). Further, the regulation cited by plaintiff, 20 C.F.R. § 404.1519t, does not authorize an ALJ to order independent medical review of a treating source's opinion.

Turning to the merits, the regulations in effect at the time of the ALJ's decision provide that nurse practitioners, such as NP Sperry, are not "acceptable medical sources," but are nonetheless sources that the ALJ can use in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. §§ 406.1513(d), 416.913(d). An "ALJ may discount the opinion of an "other source" by providing "germane reasons." *Molina*, 674 F.3d at 1111. To the extent the ALJ rejected NP Sperry's opinion, she provided germane reasons for doing so. Tr. 27. For example, while NP Sperry opined that plaintiff was markedly limited in his ability to travel to unfamiliar places or use public transportation, moderately limited in his ability to plan independently, and overall limited by social anxiety and episodes of panic, the ALJ noted that plaintiff was able to drive, attend doctor's appointments, shop without assistance, and socialize with others. Tr. 27.

Further, contrary to NP Sperry's opinion that plaintiff had limitations in his ability to work around other people, the ALJ noted that plaintiff was able to get along with authority figures and worked part-time as a cashier after alleging he became disabled. *Id.* Plaintiff argues the ALJ's reliance on his part-time work was erroneous because the ALJ did not explain how it contradicts NP Sperry's opinion. While plaintiff's part-time work was not a sufficiently clear

and convincing reason for discrediting his testimony that his chronic pain prevented him from working a full-time job, it does serve as a sufficiently germane reason for rejecting NP Sperry's opinion that plaintiff was limited in his ability to work around other people. *See Molina*, 674 F. 3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, [a reviewing court] must uphold it if the agency's path may reasonably be discerned.") (internal quotation marks omitted).

The remainder of NP Sperry's opinion was adequately incorporated into the ALJ's RFC determination. For example, consistent with NP Sperry's opinion that plaintiff was markedly limited in his ability to be aware of hazards and take appropriate precautions, the RFC limited plaintiff to no exposure to hazards. Tr. 23, 680. Similarly, the ALJ limited plaintiff to only occasional public contact and simple, routine, and unskilled work. Tr. 23. On balance, the ALJ's RFC formulation was reasonable, especially considering NP Sperry's assessment of moderate limitations indicated that, while plaintiff would likely experience intermittent difficulties in the specified functional area, he would generally be able to perform satisfactorily. Tr. 678; *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Accordingly, the ALJ did not err by giving moderate weight to NP Sperry's opinion.

## III. Remand

Plaintiff does not request a remand for an immediate calculation and payment of benefits; therefore, the court need not conduct a credit-as-true analysis. As discussed, the ALJ's reasons for rejecting plaintiff's excess-pain testimony and Dr. Greco's opinion were erroneous. The court further notes that the ALJ completely ignored the findings and opinions contained in the

detailed evaluations conducted by vocational rehabilitation services. *See* Tr. 937-41 (physical capacity examination of plaintiff administered by Trevor Tash, OT); Tr. 945-58 (neuropsychological evaluation conducted by Aaron Vederman, PhD). Accordingly, the court remands for further administrative proceedings to: (1) reevaluate plaintiff's excess-pain testimony, (2) properly examine Dr. Greco's opinion, (3) consider the vocational rehabilitation evaluations, and (4) conduct any additional necessary proceedings, including, but not limited to, reassessing plaintiff's RFC[13] and determining whether plaintiff can perform other work in the national economy.

## ORDER

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

DATED March 25, 2019.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

---

[13] Because the ALJ's RFC determination was not "based on all of the relevant medical and other evidence," it was defective. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC formulation is problematic for an additional reason. As plaintiff correctly notes, the ALJ's decision does not clearly indicate what evidence the ALJ relied upon in assessing the reaching limitations included in the RFC. The Commissioner argues the reaching limitations were based on some unspecified medical evidence and plaintiff's testimony regarding his neck and shoulder pain. Although plaintiff alleged difficulty with reaching generally, he did not allege he was more limited in overhead reaching than he was with reaching in other directions. Tr. 232. Yet, the RFC limits plaintiff to occasional overhead reaching and frequent reaching in other directions. Neither the Commissioner nor the ALJ, however, have explained why this distinction was made. Therefore, should the ALJ find on remand that plaintiff's difficulty with reaching warrants RFC limitations, the ALJ must explain what evidence supports that determination. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).